IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DAVID CLARK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:16-CV-1044 |
| | ) | |
| DUKE UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

In this ERISA action, the plaintiffs contend that the defendants breached their fiduciary duties to the plan by failing to investigate and include low-cost recordkeeping services and funds with reasonable fees and by including imprudent investment funds. They seek certification of a class made up of current and former participants of the plan. Because the plaintiffs have established Article III standing and meet the class certification standards set forth in Rule 23(a) and Rule 23(b)(1), the Court will grant the motion for class certification.

## BACKGROUND

The Employee Retirement Income Security Act imposes fiduciary duties "on those responsible for the administration of employee benefit plans and the investment and disposal of plan assets." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 355 (4th Cir. 2014). A fiduciary who breaches ERISA-imposed duties is personally liable for any losses to the plan resulting from the breach. 29 U.S.C. § 1109(a). ERISA authorizes any

plan participant to bring an action on behalf of the plan for a breach of fiduciary duty, including the right to seek associated monetary and injunctive relief.  29 U.S.C. §§ 1109(a), 1132(a)(2).

The plaintiffs are participants and beneficiaries in the Duke Faculty and Staff Retirement Plan.  Doc. 72 at ¶¶ 13-17; Docs. 70-2, -3, -4, -5, -6.  The defendants are Duke University, the Duke Investment Advisory Committee, and individuals members of the advisory committee.

The plaintiffs assert that the defendants breached their fiduciary duties to the Plan by failing to monitor and control the Plan's recordkeeping services, allowing the Plan to engage in related prohibited transactions with its recordkeepers, failing to prudently monitor the Plan fund options resulting in the inclusion of funds with overly high expenses and fees and of two allegedly imprudent funds, and violating the Plan's Investment Policy Statement by including and retaining the CREF Stock Account fund in the Plan.  *See* Doc. 72 at ¶¶ 229-63.  The plaintiffs allege that the defendants' breach resulted in higher Plan recordkeeping costs and the inclusion of lower performing, higher fee funds as compared to available alternative investments, all of which reduced the value of Plan's investments.  *Id.*  The plaintiffs seek equitable and injunctive relief, including that the defendants:

- ■ "make good to the Plan all losses to the Plan resulting from each breach of fiduciary duty,"

- ■ "[r]eform the plan to offer only prudent investments,"

- ■ "obtain bids for recordkeeping and . . . pay only reasonable recordkeeping expenses," and

- ■ "[r]emove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations."

Doc. 72 at ¶ 263.

The plaintiffs now move to certify the following class of plaintiffs under Federal Rule of Civil Procedure 23:

> All participants and beneficiaries of the Duke Faculty and Staff Retirement Plan from August 10, 2010 through the date of judgment, excluding Defendants.

Doc. 69 at 1. They ask the Court to appoint them as class representatives and to appoint Schlichter, Bogard & Denton, LLP as class counsel under Federal Rule of Civil Procedure 23(g). *Id.*

## ANALYSIS

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).[1] To show that a case falls within the exception, the plaintiff "must affirmatively demonstrate his compliance" with Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006) ("[D]istrict courts must conduct a rigorous analysis to ensure compliance with Rule 23.").

---

[1] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n. 6 (4th Cir. 2017).

As threshold matters, the putative class representatives must show that they are members of the proposed class, *see* Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members"), and must establish that the members of the proposed class are "readily identifiable" or "ascertainab[le]." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). The plaintiff must then establish that the case satisfies all four requirements of Rule 23(a) and fits into at least one of the three subsections of Rule 23(b). *Comcast*, 569 U.S. at 33-34. As in all litigation, the plaintiffs must have constitutional standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016).

Here, the issues in dispute are whether the named plaintiffs have Article III standing; whether the claims of the named plaintiffs are common and typical; whether the named plaintiffs will adequately protect the interests of the class; and whether the class can be certified under Rule 23(b)(1). Doc. 74 at 14-15, 19, 22, 26-27, 29.

## I.    Undisputed Issues

The plaintiffs' proposed class includes at least 40,000 individuals. Doc. 70-1 at 2; Doc. 35-10 at 3; Doc. 51 ¶ 12. This "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (noting district court's finding "that some 480 potential class members would easily satisfy the numerosity requirement").

The proposed class members can be easily identified in participant account records possessed by the defendants or the Plan's recordkeepers. *See, e.g.*, Doc. 70-1; Doc. 35-10 (providing example of detailed recordkeeping). The class members are ascertainable.

4

There is no dispute that Schlichter, Bogard & Denton, LLP has extensive experience in ERISA class action lawsuits, has invested time in investigating and identifying potential claims in the action, and will commit resources to representing the class. *See* Fed. R. Civ. P. 23(g)(1), (2); Doc. 70-7. The Court finds that Schlichter, Bogard & Denton, LLP will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(2), (4).

## II.    Constitutional Standing

In order to have standing to sue under Article III of the United States Constitution, a plaintiff must establish three elements: (1) that the plaintiff has sustained an injury in fact that is concrete and particularized; (2) that the injury is traceable to the defendants' actions; and (3) that a favorable judicial decision is likely to redress the injury. *Spokeo*, 136 S. Ct. at 1547; *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976); *accord Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011). There must be a named plaintiff with constitutional standing to assert each claim. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Absent constitutional standing, a federal court does not have subject matter jurisdiction. *See, e.g.*, *id.* at 342.

For the reasons that follow, the Court finds that the named plaintiffs have constitutional standing to assert the claims in Counts Three, Four, Five and Seven.

5

In Count Three, the plaintiffs allege that all funds in the Plan incurred excessive fees and expenses because the defendants breached their fiduciary duties by failing to monitor plan fees, failing to leverage the plan size to obtain reduced service costs, and failing to obtain bids to secure the lowest priced services. *See* Doc. 86 at 4-5; Doc. 72 at ¶¶ 229-38. The plaintiffs allege that the same decision-making process, or lack thereof, resulted in these excessive fees and expenses. *See* Doc. 72 at ¶¶ 231-35. The plaintiffs allege that these breaches injured them because they were assessed a portion of the Plan's higher recordkeeping and service costs that were unrelated to specific funds. *See* Doc. 72 at ¶¶ 8a, 8c, 8d.

It is undisputed at this stage that all participants, including the named plaintiffs, had the same menu of fund options and the same fee structures for those options. *See* Doc. 35-2 at 36-38; Doc. 35-3 at 10; Doc. 38-2 at 3-57. It also is undisputed that each named plaintiff invested in at least one fund in the Plan subject to the allegedly higher recordkeeping and service fees at issue in Count Three. *See* Doc. 74-10; Doc. 73 at 8.

In Count Four, the plaintiffs do not challenge a particular fund but rather challenge allegedly prohibited transactions between the Plan and its four recordkeepers. Doc. 72 at

239-44.  It is undisputed that at least one named plaintiff invested in a fund serviced by each of the four recordkeepers at issue.  *See* Doc. 74-10.

Count Five of the Second Amended Complaint essentially contains two claims.  The first is related to higher-cost share funds and the second is related to two specific funds alleged to be underperforming.

First, the plaintiffs contend that the defendants failed to consolidate the funds in the Plan in a manner that would allow the Plan to qualify for lower-cost share class funds.  Doc. 72 at ¶¶ 248, 251.  The complaint identifies 149 funds with lower-cost share class funds available.  *Id.* at ¶ 161.  The plaintiffs allege that these breaches injured them because they had to pay higher fees for the higher-cost share class funds.  *See* Doc. 72 at ¶¶ 8a, 8c, 8d.  The plaintiffs allege that the same decision-making process, or lack thereof, resulted in the inclusion of all of these higher-cost funds.  *See* Doc. 72 at ¶ 251.  It is undisputed that named plaintiffs Feather, Mehen, and Lucas each invested in at least one of the 149 funds alleged to have lower-cost share class options available.  *Compare* Doc. 72 at ¶ 161 (listing funds with lower-cost share class options) *to* Doc. 74-10 (defendants' list of named plaintiffs' investment choices during proposed class period).

Count Five also challenges the inclusion of two allegedly imprudent funds—the CREF Stock Account and the TIAA Real Estate Account.  Doc. 72 at ¶¶ 252-55.  The CREF Stock Account also is the sole fund challenged in Count Seven.  It is undisputed that named plaintiff Lucas invested in the CREF Stock Account.  Doc. 73 at 5-6.

As to the TIAA Real Estate Account at issue in Count Five, subsequent briefing has clarified that there was a named plaintiff invested in that fund when suit was filed and

7

that one of the current named plaintiffs, plaintiff Feathers, was invested in that fund when the Second Amended Complaint was filed. *See* Doc. 85-2; Doc. 85-3. This is sufficient to establish constitutional standing. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (explaining that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction").

These allegations and undisputed facts are sufficient at this stage to establish that the named plaintiffs have Article III standing to pursue their theories of liability on all Counts in the Second Amended Complaint. The named plaintiffs have alleged actual injury to their individual Plan accounts. *See Spokeo*, 136 S. Ct. at 1548 (explaining that injury in fact must be personalized and actual, not hypothetical). That injury is fairly traceable to the defendants' conduct because the plaintiffs have plausibly alleged that the defendants' breaches of fiduciary duty caused their injury. Finally, a judgment in favor of the named plaintiffs is likely to redress the injury. *See Spokeo*, 136 S. Ct. at 1547.

The defendants contend that the named plaintiffs only have standing to challenge the 25 funds in which they invested and that they do not have standing to challenge the inclusion of any of the other 375 funds in the Plan because inclusion of those funds did not injure them. Doc. 74 at 16-18; Doc. 73 at 101. However, courts have recognized that a plaintiff who is injured in his or her own plan assets—and thus has Article III standing—may proceed under § 1132(a)(2) on behalf of the plan or other participants even if the relief sought "sweeps beyond his own injury." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009); *see also, e.g.*, *Fallick v. Nationwide Mut. Ins.*

8

*Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012).[2]

The cases cited by the defendants do not require a different conclusion. Those cases involve allegations that the ERISA fiduciaries breached their duties in buying or keeping specific funds in which the named plaintiff did not invest.

For example, the defendant relies heavily on *David v. Alphin*, in which the plaintiffs challenged the inclusion of one bank-affiliated bond fund in a plan. 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011). The plaintiffs had not invested in that fund and there was no allegation that the fiduciaries' decision to invest in that fund was part of a larger decision-making process that resulted in harm to the plaintiffs. *Id.* In that context, the court concluded that the plaintiffs who were not invested in the challenged fund could not establish an injury in fact. *Id.* That is not the case here, where the plaintiffs are invested in some of the challenged funds and where they allege that the breach of

_____

[2] In their brief in opposition to the motion for class certification, the defendants admit that the named plaintiffs invested in 25 of the 400 funds in the Plan and implicitly concede that the plaintiffs have constitutional standing to assert claims based on inclusion of those funds. They did not contend that the plaintiffs made an inadequate evidentiary showing of injury based on the inclusion of those 25 funds, nor did they contend that the plaintiffs made an inadequate evidentiary showing of injury based on the inclusion of the remaining funds. Rather they appeared to contend that as a matter of law, the plaintiffs could not show injury from the Plan's investment in any of the 375 funds in which they were not invested. To the extent the defendants attempted at oral argument to add a factual or evidentiary challenge to standing based on questions beyond which plaintiff had invested in which fund, *see Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (comparing facial challenges to standing to factual challenges to standing), the Court finds those challenges were not adequately raised or addressed in the briefing and should be raised at summary judgment if a dispute still exits. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (explaining that "the proof required to establish standing increases as the suit proceeds").

fiduciary duty arose from the overall decision-making processes, or lack thereof. *See also Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784-ODE, 2012 WL 1432306, at *8 (N.D. Ga. Mar. 20, 2012).

"At bottom, the gist of the question of standing is whether [plaintiffs] have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Massachusetts v. EPA,* 549 U.S. 497, 517 (2007). At least one named plaintiff has alleged actual injury to his or her plan assets caused by the breaches asserted in Counts Three, Four, Five, and Seven. The central concern of Article III is satisfied here. *See Braden*, 588 F.3d at 593–94.

## III.    Rule 23(a)

### A. Commonality and Typicality

This case presents many questions common to the class, including whether the defendants are fiduciaries to the Plan, the scope of the defendants' fiduciary duties, whether a breach or breaches of fiduciary duties occurred, whether the Plan suffered losses, how to calculate the Plan's losses, and what equitable relief is appropriate. Cumulatively, and likely independently, these common issues are sufficient to meet the Rule 23(a)(2) requirements and the Court so finds. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003).

The claims of the named plaintiffs are also typical of the claims of the class. "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the

10

unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D 59, 65 (M.D.N.C. 2008); *see also* Fed. R. Civ. P. 23(a)(3). In this case, each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the Plan's recordkeepers and investments. *See* Doc. 72 at ¶¶ 226, 229-63. The same is true of the remedial theory, which is identical for the named plaintiffs and the class members. *See id.* at pp. 144-45.

The defendants contend that the requirements of commonality and typicality are not met because of individual statute of limitation inquiries relevant to whether a three or six year statute of limitations applies. The potential for some individual issues that would, at best, reduce any damages award does not defeat commonality and typicality under Rule 23(a).

The ERISA statute requires that a plaintiff bring suit within the earlier of six years of the breach, or three years after the plaintiff had actual knowledge of the breach or violation. 29 U.S.C. § 1113(1), (2). The defendants maintain that establishing the statute of limitations for each class member is necessary because damages are limited to the losses in class members' individual accounts within the Plan. *See* Doc. 86 at 58-60. [3]

---

[3] The plaintiffs maintain that recovery is not limited to amounts lost in the accounts of individual class members and note that a plan participant is authorized to seek damages to the Plan as a whole. Doc. 86 at 6. They also indicated at oral argument that they have a different method of calculating damages. As previously noted, how to calculate damages is a common issue, and it is one that no party has yet briefed. For purposes of this motion only, the Court will assume that the defendants are correct as to how losses should be calculated.

Commonality "does not require that all, or even most issues be common," *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993), and "even a single common question will do." *Dukes*, 564 U.S. at 359. In *Dukes*, the Supreme Court implicitly recognized that individual issues may be present in addition to the common issues without defeating commonality under Rule 23(a). 564 U.S. at 359, 362-63; *see also EQT*, 764 F.3d at 360 ("A single common question will suffice, but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke.").

In this case there are numerous common questions central to validity of each claim, as outlined *supra*. Moreover, the parties agree that several initial statute of limitations issues are common,[4] and the resolution of those issues could mean no individual questions would ever arise. For example, if the factfinder determines that all class members had actual knowledge from the Plan-wide communications so that the three-year statute of limitations applies, then the statute of limitations issue is resolved in the defendants' favor and no individual inquiries will be necessary.

If these common issues are not resolved in the defendants' favor, then the defendants contend that they will be entitled to ask each class member if the class member read the Plan-wide communications, *see, e.g.,* Doc. 74 at 20-22, and if the class

---

[4] Those common issues include whether Plan-wide communications provided actual knowledge of the alleged breaches, whether the plaintiffs were required to read the Plan-wide communications, and the date of the triggering Plan-wide communications. *See, e.g.*, Doc. 74 at 20-21; Doc. 35 at 27; Doc. 83 at 7; Doc 86 at 15, 57; *see also supra* note 3.

member had actual knowledge based on other sources of information such as communications with personal brokers. *See* Doc 86 at 57. Even if the defendants are correct in these contentions,[5] they would be successful only in limiting damages, not precluding them entirely. The presence of individual statute of limitations defenses that may or may not ever be reached and that would limit, not preclude, damages does not negate the abundance of common legal and factual questions present here that collectively, if not individually, are "central to the validity of each one of the claims." *EQT*, 764 F.3d at 360.

The defendants cite cases that largely pre-date *Dukes* and evaluate commonality under Rule 23(b)(3). *See* Doc. 74 at 19. Rule 23(b)(3) requires common issues to predominate over individual issues and imposes a much higher threshold showing of commonality not applicable to commonality determinations under Rules 23(a). *See Dukes*, 564 U.S. at 359 (agreeing that it is not appropriate to apply the Rule 23(b)(3) factors to the commonality determination). In *Broussard v. Meineke Disc. Muffler Shops, Inc.*, the only published decision from the Fourth Circuit on which the defendants rely, the Fourth Circuit explained that it did "not suggest that the commonality and typicality

---

[5] If the plaintiffs prevail on the six year statute as to one named plaintiff and recover class-wide damages for loss to the Plan, not losses to individual accounts, *see* note 3, it seems questionable that individual inquiry of class members would have any effect on the damages award to the Plan. However, the Court need not decide this issue, which has not been briefed, in order to resolve the pending motion.

13

elements of Rule 23 require that members of the class have identical factual and legal claims in all respects." 155 F.3d 331, 344 (4th Cir. 1998).[6]

Should such individual statute of limitations questions arise, there is no reason to think that the Court cannot manage a process to resolve them. And should individual statute of limitations issues materialize that render all the named plaintiffs atypical representatives, the Court can consider whether decertification of the class is appropriate.

## B. Adequate Representation

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). It "serves to uncover conflicts of interest between named parties and the class they seek to represent" as well as to evaluate "competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 & n.20 (1997).

The named plaintiffs have declared that they will fairly and adequately represent the interests of the class, Docs. 70-2, -3, -4, -5, -6, and they have shown commitment to the case by providing deposition testimony. *See* Docs. 74-5 to 74-9. The requirements of Rule 23(a)(4) are satisfied.

The defendants do not contest the qualifications of proposed class counsel. The Court has independently reviewed their qualifications, experience, knowledge of the law,

---

[6] The defendants do not contend and have not made any showing that they have a statute of limitations defense unique to any named plaintiff. *See, e.g.*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (noting that several courts have held that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation,"); *Beck v. Maximus, Inc.*, 457 F.3d 291, 296-97 (3d Cir. 2006) (citing consensus among Second, Third, Seventh, and Ninth Circuits and commentators).

and resources.  *See* Doc. 70-7.  Proposed class counsel are competent and able to fairly and adequately represent the interests of the class.  *See* Fed. R. Civ. P. 23(g).

The defendants contend that intra-class conflicts exist for multiple reasons.  First, they maintain that some class members who currently pay nothing for recordkeeping would be harmed if the plaintiffs are successful and their recordkeeping fees go up.  Doc. 74 at 23.  Specifically, the defendants assert that the plaintiffs seek a $30 flat fee for recordkeeping services and that is more than some class members currently pay.  *Id.*  The defendants also contend that the named plaintiffs are in conflict with each other, and necessarily other class members, about how recordkeeping fees should be allocated among participants in the Plan.  These contentions misunderstand the plaintiffs' claims and requested relief on the excessive recordkeeping claims.

The plaintiffs are not seeking to impose a $30 flat recordkeeping fee for each Plan participant, and they have not asked this Court to mandate a particular recordkeeping fee allocation among Plan participants.  *See, e.g.*, Doc. 72 at ¶¶ 56-57 (providing an example of how a fiduciary can choose how to allocate recordkeeping fees after negotiating lower recordkeeping fees for the Plan as a whole).  The plaintiffs claim that by failing to obtain bids for recordkeeping services, the Plan's fiduciaries failed to leverage the number of plan participants to obtain the lowest cost recordkeeping services for the Plan as a whole.  *See* Doc. 72 at ¶¶ 231-35.  As a remedy, the plaintiffs ask the Court to order the fiduciaries to pay back to the Plan the excessive fees that have been paid and, moving forward, to "obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses."  Doc. 72 at pp. 144-45.  They do not ask the Court to allocate recordkeeping

15

fees among Plan participants going forward. *See id.*; Doc. 83 at 8. Thus, the defendants have not identified an intra-class conflict on the excessive recordkeeping fee claims. *Accord Gunnells,* 348 F.3d at 431 n. 7 (noting that "potential conflicts relating to relief issues which would arise only if the plaintiffs succeed on common claims of liability on behalf of the class will not bar a finding of adequacy.").

The defendants also assert that an intra-class conflict exists because some Plan participants may have profited from the allegedly imprudent investments. Doc. 74 at 25-26.[7] The defendants have not identified any class members that did, in fact, make money on the allegedly imprudent investment. A hypothetical conflict does not defeat certification. *See Gunnells,* 348 F.3d at 430 (noting that a conflict "must be more than merely speculative or hypothetical"*).*

Even if the defendants could identify class members that profited from the alleged imprudent investments, no conflict would exist. The defendants have cited no case for the proposition that a class member who profited from investing in a particular fund would be forced to pay money back to the Plan if the Plan's inclusion of that fund violated the Plan's fiduciary duties. Moreover, no class member is entitled to participate in a plan that is run in a way that breaches the fiduciary duties owed to participants as a

---

[7] The defendants also assert that two named plaintiffs who did not invest in either of the allegedly imprudent funds are inadequate representatives because they do not have a common interest with the class members. Doc. 74 at 24. The defendants do not, however, assert that there is no adequate representative for the imprudent fund claims. The defendants have not identified, and the Court is not aware of, any case that required each and every named plaintiff to be an adequate representative on each and every claim. *Accord Broussard*, 155 F.3d at 344 (explaining that members of the class need not have identical factual and legal claims).

whole, even if those breaches may have provided an individual benefit to a particular investor. *See, e.g.*, *Sacerdote v. N. Y. Uni.*, No. 16-cv-6284, 2018 WL 840364, \*4 (S.D.N.Y Feb. 13, 2018) ("If, in fact, plaintiffs are correct that the inclusion of these funds was a breach of the duty of prudence, then no plan participant would have a legal interest in continuing to invest in a plan that was adjudged imprudent."); *Ruggles v. WellPoint, Inc.*, 272 F.R.D. 320, 338 (N.D.N.Y. 2011) ("Adequacy is not undermined where the opposed class members' position requires continuation of an allegedly unlawful practice."); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 692 (D. Minn. 1995) ("[T]he fact that an illegally controlled potash market tends to favor the long-term interests of several large members of the putative class is not sufficient to prevent class certification. This is not an interest the law is willing to protect."). Since a fund would be removed from the Plan only if its inclusion was found to violate the requirements of ERISA, class members would have no legally recognizable interest in maintaining the removed funds and no conflict exists.

There is nothing to indicate that the plaintiffs' theories of liability, evidence, or case strategy will change if participants who profited from allegedly imprudent investments are included in the class. These potential conflicts are not fundamental and do not go to the heart of the role of the named plaintiffs as class representatives. *See Gunnells,* 348 F.3d at 431 (finding potential conflicts to be non-fundamental when they did not relate to the factual or legal positions to be taken in the litigation or the plaintiff's interest in establishing liability).

The defendants further assert that some putative class members will be "unhappy" if the plaintiffs prevail and the imprudent funds are removed from the Plan and that this creates a conflict between the plaintiffs and such class members. Doc. 74 at 25-26. This contention misunderstands the role of a class representative, who has no duty to make all class members happy. The class representative represents the *legal* interests of the class. *See* Fed. R. Civ. P. 23(g). The fact that a few class members might be "unhappy" if they are no longer able to participate in a plan that is run in a way that breaches the fiduciary duties owed to participants does not create a legal conflict between those class members and the named plaintiffs. *See, e.g.*, *Sacerdote*, 2018 WL 840364, *4.

The defendants also challenge the adequacy of certain named plaintiffs who are still invested in the allegedly imprudent funds. *See* Doc. 74 at 28. This has little to nothing to do with adequacy, as the determination of whether a breach occurred is not based on the plaintiffs' conduct. *See Tatum*, 761 F.3d at 356

Finally, the defendants claim that all of the named plaintiffs are inadequate class representatives because they were not concerned about the Plan before an attorney contacted them and because they lack detailed knowledge about their claims. Doc. 74 at 27-29. This is not a barrier to class certification. "It is hornbook law … that in a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Gunnells,* 348 F.3d at 430. The complex nature of ERISA fiduciary breach claims often requires investors to rely on their

attorneys and hired experts and such reliance does not make the plaintiffs inadequate representatives. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372-73 (1966). For this same reason, an investor's lack of concern about the plan before discussing the plan with a lawyer does not make the investor an inadequate representative.

### IV. Rule 23(b)(1)

The plaintiffs contend that this class should be certified under Rule 23(b)(1), which authorizes certification in two separate situations. Pursuant to Rule 23(b)(1)(A), a class can be certified "where separate actions by or against individual class members would create a risk of establishing incompatible standards of conduct for the party opposing the class, such as where the party is obliged by law to treat the members of the class alike." *Dukes*, 564 U.S. at 361 n. 11. Pursuant to Rule 23(b)(1)(B), a class can be certified "where individual adjudications as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." *Id.*

Separate actions over whether the defendants' investment procedures and management methods violated their fiduciary duties could result in decisions that place incompatible requirements on the defendants in terms of either the losses that defendants would have to pay back to the Plan, or the requirements for obtaining future Plan services, or both. *See* Doc. 70 at 19-20. For this reason, the Court finds that the class meets the requirements of Rule 23(b)(1)(A). *See, e.g.*, *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 576-77 (D. Minn. 2014) (certifying class of ERISA plan participants under Rule 23(b)(1)(A) and citing similar cases).

The plaintiffs also have established that individual adjudications would be dispositive of the interests of the other participants not parties to the individual adjudications, because the claims concern the same actions in managing the Plan and because damages are owed to the Plan as a whole and not individual plaintiffs. For this reason, the Court finds that the class meets the requirements of Rule 23(b)(1)(B). *See, e.g.*, *Sacerdote*, 2018 WL 840364, at *6 (certifying class of ERISA plan participants under Rule (b)(1)(B)); *Krueger*, 304 F.R.D. at 578 (same).

The defendants contend that the plaintiffs' request for monetary relief bars certification under Rule 23(b)(1). Doc. 74 at 29. This argument fails on several levels. First, the Supreme Court did not say in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), that claims for monetary relief can never create incompatible standards under Rule 23(b)(1)(A). *See Sacerdote,* 2018 WL 840364, at *6. *LaRue* turned on very different facts from those here, where the plaintiffs seek monetary relief on behalf of the Plan as a whole, not based on injury to an individual account. Second, the plaintiffs have requested injunctive relief. *See* Doc. 72 at 145 (*e.g.*, request to order Plan to obtain bids for recordkeeping services). Finally, the plaintiffs also have established a basis for certification under Rule 23(b)(1)(B), which does not require incompatible standards. *See Sacerdote*, 2018 WL 840364, at *6 (rejecting similar contentions).

The defendants also contend that the Supreme Court in *Dukes* limited "individualized monetary claims" to Rule 23(b)(3) classes. Doc. 74 at 31 (citing 564 U.S. at 362). As the plaintiffs correctly point out, *Dukes* addressed Rule 23(b)(2) classes and did not hold that monetary claims in Rule 23(b)(1) classes are barred. Moreover, the

20

plaintiffs are not requesting individualized monetary claims but rather are seeking relief to the Plan as a whole.

## CONCLUSION

The named plaintiffs are members of the proposed class and have Article III standing; the proposed class is numerous but ascertainable; many common questions of law and fact have been identified; the named plaintiffs' claims are typical of the class claims; the defendants' defenses are typical as applied to the named plaintiffs and proposed class; and the named plaintiffs and proposed class counsel are capable of adequately representing class interests. The minor differences that the defendants identified between the named plaintiffs and proposed class and within the proposed class are not material to the plaintiffs' theories of liability. The plaintiffs have met the standards for class certification set forth in Rule 23(a) and Rule 23(b)(1). Therefore, the Court will grant the motion for class certification.

It is **ORDERED** that:

1. The plaintiffs' motion for class certification, Doc. 69, is **GRANTED**.

2. Schlichter, Bogard & Denton, LLP is appointed as class counsel.

3. The following class is certified:

> All participants and beneficiaries of the Duke Faculty and Staff Retirement Plan from August 10, 2010 through the date of judgment, excluding Defendants.

This the 13th day of April, 2018.

UNITED STATES DISTRICT JUDGE