IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID CLARK, *et al.*,<br>    Plaintiffs,<br>v.<br><br>DUKE UNIVERSITY, *et al.*,<br>    Defendants. | 1:16-CV-1044 |
| KATHI LUCAS, *et al.*,<br>    Plaintiffs,<br>v.<br><br>DUKE UNIVERSITY,<br>    Defendant. | 1:18-CV-722 |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge,

    The plaintiffs seek final court approval of a settlement agreement with the defendants and dismissal with prejudice of two consolidated ERISA class actions. In February 2018, the Court granted preliminary approval, ordered settlement notice be sent to class members, and set a fairness hearing for June 18, 2019. No class member filed an objection to the proposed settlement. After considering the record, the proposed settlement agreement, the supporting memorandum and exhibits, and the statements of counsel during the fairness hearing, the Court finds that the settlement meets the requirements of Rule 23 and is fair, reasonable, and adequate. The Court will grant the motion and approve the settlement.

## I. Procedural History

Plaintiffs filed *Clark v. Duke University* in August 2016, *see* Doc. 1,[1] alleging, *inter alia*, that defendants: (1) breached their fiduciary duties by causing the Duke University Faculty & Staff Retirement Plan to incur unreasonable recordkeeping expenses; (2) committed prohibited transactions by allowing four vendors to provide Plan recordkeeping services and receive Plan assets from which they retained unreasonable compensation; and (3) failed to prudently monitor Plan investment options resulting in the use of high-cost, low-performing funds compared to available alternatives. Docs. 1, 72.

On May 11, 2017, the Court granted in part and denied in part the defendants' motion to dismiss the amended complaint. Doc. 48. The plaintiffs sought and were granted leave to file a second amended complaint in December 2017, Doc. 72, and later moved to further amend their complaint to add Count IX, which asserted claims of prohibited transactions and fiduciary breaches arising out of allegations that Duke used Plan assets to pay for Duke employee salaries and fringe benefits. Doc. 99. The Court denied the plaintiffs leave to file a third amended complaint on June 11, 2018. Doc. 107. As a result, the plaintiffs filed *Lucas v. Duke University* on August 20, 2018, asserting those claims against Duke that the Court denied the plaintiffs leave to pursue in *Clark*. *See* Complaint, *Lucas*, No. 1:18-CV-00722, Doc. 1 (M.D.N.C.). The defendants filed a motion to dismiss the claims in *Lucas*, which the parties briefed in full before reaching settlement and which was pending at the time of settlement. *See id.* at Doc. 9.

---

[1] All "Doc." references are to the *Clark* docket, No. 1:16-CV-01044, unless otherwise noted.

The Court granted class certification in *Clark* on April 13, 2018 to a class of:

> All participants and beneficiaries of the Duke Faculty and Staff Retirement Plan from August 10, 2010 through the date of judgment, excluding Defendants.

Doc. 96 at 21. The Court also appointed named plaintiffs David Clark, Thomas Mehen, Kathi Lucas, Jorge Lopez, and Keith Feather as class representatives and Schlichter, Bogard & Denton as Class Counsel. *See id.* at 14, 21.

In *Clark*, the parties have engaged in over two years of hard-fought litigation that included extensive motions practice, exchanging over 762,000 pages of documents, and taking 7 expert and 20 fact depositions. *See* Doc. 160-3 at ¶¶ 20, 22, 25. While the *Lucas* litigation had yet to proceed to discovery, the formal discovery obtained in *Clark* led to the claims asserted in *Lucas*, and Class Counsel proffered that they would not need additional discovery to litigate these claims. *See* Doc. 99 at 1, 8.

On November 29, 2018, the parties notified the Court that they reached a settlement in principle in both matters. *See* Minute Entry 11/29/2018. On January 16, 2019, after additional arm's length negotiations with the aid of a neutral mediator, the parties signed a detailed settlement agreement. *See* Doc. 149-2; Doc. 160-3 at ¶ 28. Plaintiffs then moved for preliminary approval of the settlement. Doc. 149.

After requesting and receiving additional briefing from the parties, *see* Docs. 155, 156, the Court granted preliminary approval on February 7, 2019. Doc. 158. The Court also certified a settlement class of:

> All persons who are or were participants or beneficiaries in the Plan at any time during the Class Period, including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period,

> and/or Alternate Payee, in the case of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Kyle Cavanaugh, Tim Walsh, James S. Roberts, Rhonda Brandon, Steve Smith, Anders Hall, Richard Schmalbeck, Michael Lazar, Dr. Nan Jokerst, Erik Koehrsen, and Jean Shields. The Class Period is August 10, 2010 through the date of entry of this Preliminary Order.

*Id.* at pp. 4–5 ¶ 2. For settlement purposes, the Court appointed named plaintiffs Lucas, Lopez, and Feather as class representatives in *Lucas, see id.* at p. 5 ¶ 4; Doc. 149-2 at p. 3 ¶ 2.12 (defining "Class Representatives"), and consolidated the *Clark* and *Lucas* actions. *See* Doc. 157.

The Court ordered the appointed Settlement Administrator, Analytics, to notify class members of the settlement and how to object to the settlement terms. *See* Doc. 158 at 13–16. The Court permitted any class member to file objections no later than thirty calendar days before the fairness hearing scheduled for June 18, 2019. *See id.* at 6, 16–17.

The project manager at Analytics affirms that notice was emailed or mailed to all 58,594 class members and was published on a settlement website. Doc. 163-3 at ¶¶ 5–6; *see also id.* at pp. 14–47. This includes 10,724 former participants and 47,870 current participants. *Id.* at ¶ 5. Of those notices returned undeliverable, Analytics was able to identify corrected or updated addresses for all but approximately 2,000 class members. *See id.* at ¶¶ 7–8. Analytics also established a toll-free number, received 799 telephone calls, and mailed 13 additional notices as a result of those calls. *Id.* at ¶ 8.

The notice sent to class members informed former participants that they had to submit a claim form by June 3, 2019 to recover, *see id.* at 15, 25, as required by the Court's Order granting preliminary approval. Doc. 158 at ¶ 11. At the June 18 fairness

hearing, Class Counsel confirmed that 2,822 former participants submitted claims forms by the June 3, 2019 deadline, which is approximately 26% of all potential former participants entitled to recover. *See* Doc. 163-3 at ¶ 5 (stating 10,724 former participants were identified). Class counsel also provided additional information about the settlement agreement during the fairness hearing, as requested by the Court and noted as relevant below. No class member objected to the settlement. *See* Doc. 163 at 9.

## II. Proposed Settlement Agreement

The proposed settlement agreement provides for a Gross Settlement Amount[2] of $10,650,000. Doc. 149-2 at p. 4 ¶ 2.26. From this and subject to court approval, Class Counsel may receive up to $3,550,000, or one-third the common fund, in attorney's fees and $825,000 in attorney's expenses, and class representatives may receive case contribution awards of $25,000 for two named plaintiffs in *Clark* and $30,000 for three named plaintiffs in both *Clark* and *Lucas*, who were also appointed class representatives for their respective classes. *See id.* at pp. 2–3 ¶¶ 2.3, 2.13. Class Counsel has requested these awards in another motion, Doc. 159, which the Court has granted in an Order issued concomitantly with this one.

The remaining $6.1 million, less administrative expenses and a contingency award, will be distributed to class members in amounts proportional to their average quarterly balance during the Class Period. *See id.* at p. 5 ¶ 2.29, p. 15 ¶ 6.4. At the preliminary

---

[2] All capitalized terms used herein have the Definitions in the Settlement Agreement, Doc. 149-2 at Article 2, which is incorporated herein by reference.

approval stage, Class Counsel estimated total administrative expenses would be $162,729, with a net settlement of approximately $5,972,271[3] and an average recovery of about $103 per participant. *See* Doc. 156 at 15. At the settlement hearing, Class Counsel revised the estimated net settlement to just under $5.7 million but also updated the estimate for the average recovery to $118. The estimated maximum recovery by an individual class member is $10,309.

In addition to the changes Duke voluntarily made to the plan after the lawsuit was filed, the settlement agreement obligates Duke to provide considerable non-monetary relief. Duke has agreed to provide Class Counsel with a list of the Plan's investment options and fees, as well as a copy of the Investment Policy Statement annually for three years. *See* Doc. 149-2 at p. 21 ¶¶ 10.1–10.2. Duke must also communicate investment options to current plan participants and, during the third year of the settlement period, retain an independent consultant to evaluate and recommend whether Duke should issue a request for proposals for recordkeeping and administrative services. *Id.* at p. 21 ¶¶ 10.3–10.4. The agreement also requires the Plan's fiduciaries to consider certain factors when choosing investment options and prohibits Duke from causing Plan assets to be used to pay salaries and fringe benefits and other expenses during the three-year Settlement Period. *Id.* at p. 22 ¶¶ 10.8–10.9. Class Counsel has also submitted the declaration of a financial analyst, who has reviewed the settlement terms and who estimates the

---

[3] Class counsel also noted that Duke's deposit of $2 million in treasury notes shortly after the Court granted preliminary approval has resulted in additional earnings of over $30,000 that will also go to the class.

settlement's non-monetary terms provide an additional $27 million in value to the class from future recordkeeping fee savings and other fee reimbursements. *See* Doc. 160-5 at ¶¶ 16, 22. Separately, Class Counsel estimates additional tax savings of about $2 million. *See* Doc. 160 at 13.

The proposed settlement defines a Class Period of August 10, 2010 through the date of entry of the Preliminary Order, February 7, 2019. *See* Doc. 149-2 at p. 3 ¶ 2.11; Doc. 158. The agreement divides class members into two groups: "Former Participants" who did not have a balance greater than $0 as of December 31, 2018, and "Current Participants" who did. *See* Doc. 149-2 at p. 4 ¶¶ 2.17, 2.24. Under the agreement's allocation plan, Current Participants need not submit a claim form to receive payment. *Id.* at p. 16 ¶ 6.5. Instead, if they still have an account balance greater than $0 at the time of distribution then the Settlement Administrator will deposit funds directly into their Plan accounts. *Id.* at p. 16 ¶¶ 6.5.2–6.5.3. If current participants have a $0 account balance when settlement payments are issued, the Settlement Administrator will issue a check instead. *Id.* at p. 17 ¶ 6.6.

Former plan participants must timely submit a claim form to receive payment, *id.* at p. 3 ¶ 2.4 (defining "Authorized Former Participant"), p. 17 ¶ 6.7 (providing for payments to "Authorized Former Participants"), and may elect to receive funds as a rollover to their new retirement accounts or as a check sent to them. *Id.* at p. 17 ¶ 6.7. Former participants will not recover if their calculated award is $5.00 or less because this "would cost more in processing than its value." *Id.* at p. 15 ¶ 6.4.3. Any undistributed funds will be paid to the

Plan to defray administrative fees and expenses of the Plan and may not be used to reimburse the defendants or offset any of their settlement-related costs. *Id.* at p. 19 ¶ 6.13.

Under Article 8 of the agreement, class members agree to release all related parties of all Plan-related claims regardless of whether they discover facts related to the claims after the settlement is finalized. *Id.* at pp. 19–20 ¶¶ 8.1–8.3. Released claims are limited to those related to the defendants' management of the Plan and certain aspects of the settlement agreement such as the method of plan allocation; the release specifically excludes claims related to individual denial of certain other ERISA benefits, employment-related claims such as Title VII or FLSA claims, and claims arising exclusively from conduct outside of the Class Period. *Id.* at p. 6 ¶ 2.36. The release also specifically provides that it shall not "preclude any action to enforce the terms of this Settlement Agreement in accordance with the procedures set forth" in the agreement. *Id.* at p. 20 ¶ 8.2. The released parties include the defendants, related entities, and their insurers. *Id.* at pp. 5–6 ¶ 2.35. Class Counsel alone have standing to enforce the agreement on behalf of plaintiffs and class members and have "full and sole discretion" to initiate enforcements proceedings; if they do so, they will not receive any additional fees beyond those already awarded by the Court. *Id.* at p. 25 ¶ 13.4. If a dispute arises, the parties agree to a specific process that includes mediation. *Id.* at pp. 25–26 ¶ 13.6. If that fails, the parties agree that this Court has personal jurisdiction over class members and the defendants for the purposes of resolving any disputes about the agreement. *Id.* at p. 26 ¶ 13.7.

After preliminary approval, the Plan engaged an independent fiduciary to evaluate the settlement for purposes of determining whether to authorize the Plan's participation in

the settlement, as required by federal regulations. Doc. 163-1. The independent fiduciary concluded that the settlement was reasonable. *Id*. at 2. A financial analyst engaged by Class counsel estimated that the settlement will save recordkeeping fees of about $24 million and reimbursement of other fees of about $3.1 million. Doc. 160-5 at ¶¶ 16, 22.

### III. Final Class Action Settlement Approval

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); William H. Rubenstein, 5 Newberg on Class Actions § 13.44, n.1 (5th ed. June 2019 Update) (collecting cases).

The Court should approve a class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing, e.g., *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)). The Court acts as a fiduciary of the class members. *Sharp Farms v. Speaks*, 917 F.3d 276, 293–94 (4th Cir. 2019).

A four-factor test is applied to determine the fairness of a proposed settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area [of law at issue]." *Jiffy Lube*, 927 F.2d at 159; *see also U.S. Airline Pilots Ass'n v. Velez*, No .3:14-cv-00577-RJC-DCK, 2016 WL 1615408, at *4 (W.D.N.C. Apr. 22, 2016) (applying same standard).

The Court assesses the adequacy of the settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159; *Beaulieu*, 2009 WL 2208131, at *26 (applying same factors). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms*, 917 F.3d at 299.

Under Rule 23, the Court also considers whether the proposed settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Any differential treatment requires justification. *See* 4 Newberg On Class Actions § 13:56 (5th ed. June 2019).

**IV. Analysis**

All four fairness factors favor approval here. The *Clark* matter had an advanced posture when the parties reached settlement, the parties having litigated motions to

dismiss, for class certification, and to exclude experts, among others. The parties exchanged over 762,000 pages of documents during discovery in addition to taking 7 expert and 20 fact depositions. *See* Doc. 160-3 at ¶¶ 20, 22, 25. Duke had also filed for summary judgment, Doc. 138, giving the plaintiffs and class counsel a full understanding of any potential dispositive problems with their claims. Although *Lucas* was not in the same advanced posture as *Clark*, the matters involve the same parties and Plan and the discovery in *Clark* led directly to the claims asserted in *Lucas*; therefore, a settlement in *Lucas* under these circumstances is not premature. The parties engaged in mediation for over six months before reaching an agreement on all terms in both matters, *see* Doc. 160-3 at ¶ 28, and there is no indication that those negotiations were anything but adversarial and arm's length. Finally, as this Court has recently recognized, Class Counsel has extensive experience in ERISA and class action litigation. *See Sims v. BB&T Corp.*, No. 15cv732, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019); Doc. 160-1 at ¶¶ 3–4.

The settlement is also adequate in light of the relevant factors and the record. As noted above, Class Counsel estimates that approximately $5.7 million will remain after attorney's fees, expenses, and administrative costs are deducted, providing an average recovery of $118, with individual variation allowing some class members to recover as much as $10,000. Although the amount of recovery is relatively small in proportion to the claimed damages, *see* Doc. 121-5 at 65 n.225 (estimating at least $44.8 million in unreasonable recordkeeping fees); *id.* at ¶¶ 9, 80, 99, 105, 112 (estimating damages of $6.1, $34.3, and $228.2 million across the Plan's Tier 1, 2, and 3 funds, respectively); Doc. 156 at 12 n.7 (estimating damages in *Lucas* of 1.6 million), this amount reflects a

11

reasonable and significant recovery under the circumstances given the value of settlement terms benefitting the class beyond the direct monetary payments and the substantial challenges to obtaining full recovery.

The monetary value of the settlement is greater when the injunctive relief and resulting reduced fees are taken into account. Doc. 160-5. Class Counsel has presented evidence that reforms in the Plan's administration resulting from this litigation will also save approximately $24 million in present-day dollars from 2019 to 2023. *See id.* at ¶ 16.[4] The settlement has an additional advantage over recovery at trial as class members will accrue the tax-deferred monetary value now rather than in several years. Taken together, the total value of the monetary and non-monetary relief reflects over 12% of the damages sought. *See* Doc. 160 at 13, 16; Doc. 160-5 at ¶¶ 16, 22.

Class Counsel also described in their supplemental briefing the relative strength of their case, noting significant challenges due to the novelty of ERISA class actions over 403(b) plans, an unfavorable judgment following a bench trial in *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), and recent dismissals in similar actions.[5] *See* Doc. 156 at 2–9. The judgment in *Sacerdote* provides a significant challenge to this matter specifically, as the trial court rejected claims based on some of the same funds at

---

[4] *See also Kifafi v. Hilton Hotels Ret. Plan*, 999 F.Supp.2d 88, 96, 100 (D.D.C. 2013) (applying "catalyst theory" to recovery of attorneys' fees from a common fund, the value of which included benefits obtained through litigation).

[5] *See, e.g., Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *Divane v. Nw. Univ.*, No. 16 C 8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018).

issue in this matter and rejected testimony of one of the same experts plaintiffs rely on in this matter. *See* 328 F. Supp. 3d at 280 (noting claims based on the CREF Stock Account and TIAA Real Estate Account), 282 n.19 (discussing expert Michael Geist).

The Court has great familiarity with the plaintiffs' claims through the motions practice in *Clark* and litigation around adding the claims in *Lucas*. The Court concurs with the evaluations of Class Counsel and the plan's independent fiduciary that despite substantial evidence to support the plaintiffs' claims, there were potential but real legal and factual obstacles to ultimate recovery. The settlement amount reasonably takes into account the strengths and weaknesses of the plaintiffs' case, as well as the potential likelihoods that the defendants may either prevail in motions practice or at trial or appeal any recovery at trial, thus delaying (or foreclosing) any benefit to the class members. The settlement also includes non-monetary terms, such as reforms in the Plan, that are beneficial to the class and might not be included in any recovery at trial. Overall, the settlement terms are substantial in light of the tens of thousands of class members who will recover damages and benefit from the additional non-monetary changes to the Plan.

The parties would almost certainly incur substantial additional litigation expense if *Clark* proceeds through summary judgment briefing to trial and if *Lucas* continues to discovery and trial. The parties expected trial in *Clark* to take approximately 20 days, *see* Doc. 54 at 5(h), which would likely require substantial expenses to present expert witnesses. Class Counsel have not expressed any concerns as to the solvency of the defendants or their ability to recover if they were to proceed to trial, nor is there a basis for

any such concerns on the record. Overall, the record supports that, in light of the relevant factors, the settlement here is fair.

Finally, the proposed settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). All class members entitled to recovery will be paid proportionately to their average quarterly balances. The difference in payment methods—direct deposit for current and check for former participants—is justified given the different circumstances of current and former participants, and former participants can still receive tax benefits by opting for a roll-over payment. While no distributions will be made of $5.00 or less, this disparate treatment is also acceptable, as any awards of this size would "cost more in processing than its value." Doc. 149-2 at p. 15 ¶ 6.4.3. Allowing such small recoveries would only increase administrative costs and diminish recovery to all class members in exchange for negligible benefits to some class members.

In sum, the record and information provided by Class Counsel in filings and at the fairness hearing, and the absence of any objections by class members, support the conclusion that the proposed settlement is fair, reasonable, and adequate, and it should be approved. The Court so finds.

## V. Conclusion

It is **ORDERED** that the motion for final approval of the settlement agreement, Doc. 162, is **GRANTED** and the settlement of the consolidated Class Action is approved

as adequate and as fair and reasonable to the Plan and the Settlement Class. Judgment will be entered concomitantly.

This, the 24th day of June, 2019.

/s/ [signature]
UNITED STATES DISTRICT JUDGE